# In the United States Court of Federal Claims

No. 19-1308C
(Filed Under Seal: April 1, 2020)
(Reissued for Publication: April 22, 2020)[*]

```
*************************************
HVF WEST, LLC,                      *
                                    *
            Plaintiff,              *
                                    *
v.                                  *   Postaward Bid Protest; Motion for Stay of
                                    *   Judgment; RCFC 62(d)
THE UNITED STATES,                  *
                                    *
            Defendant,              *
                                    *
and                                 *
                                    *
LAMB DEPOLLUTION, INC.,             *
                                    *
            Defendant-Intervenor.   *
*************************************
```

E. Sanderson Hoe, Washington, DC, for plaintiff.

Steven M. Mager, United States Department of Justice, Washington, DC, for defendant.

Shar Bahmani, Scottsdale, AZ, for defendant-intervenor.

## OPINION AND ORDER

**SWEENEY**, Chief Judge

Defendant-intervenor Lamb Depollution, Inc. ("Lamb") moves, pursuant to Rule 62(d) of the Rules of the United States Court of Federal Claims ("RCFC"), for a stay of the execution of the judgment entered by this court on November 26, 2019, pending its appeal. That judgment encompassed an injunction of Lamb's "continuing performance on the contract awarded to Lamb pursuant to the solicitation at issue [in this postaward bid protest]," and also directed that the

---

[*] The court issued this Opinion and Order under seal on April 1, 2020, and directed the parties to submit proposed redactions. The parties filed a status report on April 21, 2020, in which they indicate that no material contained in the court's decision requires redaction.

government "cancel the contract awarded to Lamb." J. of Nov. 26, 2019. Plaintiff HVF West, LLC ("HVF") opposes Lamb's motion.[1]

The court has before it Lamb's motion, HVF's response brief, and Lamb's reply brief. As explained below, Lamb has not demonstrated that a stay pending appeal is warranted by the circumstances of this litigation. For this reason, Lamb's motion must be denied.

## I. BACKGROUND

On February 27, 2019, the Defense Logistics Agency Disposition Services ("DLA") issued solicitation A0007598—an invitation for bids for a contract to purchase and destroy United States military property in the Tucson area.[2] In the solicitation, the DLA stated that the award would "be based on the highest priced, responsive, responsible bidder, and other factors, whose bid is the most advantageous to the [United States] Government." The DLA further explained that the Sales Contracting Officer ("SCO"), when making the award decision, would consider various elements, including, as relevant here, a bidder's (1) financial responsibility and (2) its treatment, storage, and disposal facility ("TSDF") plan.

After reviewing the bids received in response to the solicitation, the SCO notified Lamb that it was the apparent highest bidder. The SCO subsequently issued a Notice of Award to Lamb. However, on August 28, 2019, HVF filed its protest in this court alleging various errors in the SCO's evaluation of bids.

As explained in this court's opinion denying Lamb's motion for reconsideration, the court sustained HVF's protest on the grounds that the SCO failed to follow the evaluation process with respect to the financial responsibility and the TSDF plan criteria. See Recons. Op. 2. Regarding financial responsibility, the court held that "[u]nder the solicitation, a bidder was required to submit its cost projections to be eligible for an award. Because Lamb did not submit its cost projections, the SCO failed to follow the terms of the [s]olicitation." Id. (quoting Op. 21-22). The court also addressed the TSDF plan requirement and noted:

> To receive an award, a bidder needed to submit a TSDF plan detailing, among other things, its temporary storage facility meeting the requirements of 40 C.F.R. § 761.65, its procedures for dealing with polychlorinated biphenyls, and the EPA

---

[1] The government also appealed the judgment but has taken no position on Lamb's request for a stay of the execution of the court's judgment pending appeal.

[2] The facts recited here are largely taken from the court's opinion denying Lamb's motion for reconsideration which issued on January 8, 2020 ("Recons. Op."). Citations to underlying documents on the docket have been omitted here but are found in that prior opinion. See Recons. Op.; see also HVF W., LLC v. United States, 146 Fed. Cl. 451 (2020) ("HVF II"). Additional background facts are provided in the court's opinion resolving the parties' cross-motions for judgment on the administrative record which issued on November 22, 2019 ("Op."). See Op.; see also HVF W., LLC v. United States, 146 Fed. Cl. 314 (2019) ("HVF I"), appeals docketed, Nos. 2020-1414, 2020-1583 (Fed. Cir. Jan. 30, 2020, Mar. 18, 2020).

> identification number for its facility. Lamb did not submit such a plan. Because Lamb failed to submit the materials necessary to receive a contract, the SCO failed to follow the terms of the solicitation when he awarded Lamb a contract.

Id. (quoting Op. 22). After concluding that the aforementioned errors were prejudicial, the court enjoined the DLA

> from continuing performance on the contract awarded to Lamb pursuant to the solicitation at issue in this protest, [and] directed the SCO to cancel the contract awarded to Lamb, and further direct[ed] the SCO to either (1) select a new awardee from among the existing bidders in accordance with the terms of solicitation A0007598 or (2) issue a new solicitation.

Id. at 3 (quoting Op. 27). In response to the court's directives, the DLA issued a stop work order for performance under Lamb's contract and issued a bridge contract solicitation, A0008025. Both HVF and Lamb submitted bids for the bridge contract, which had not been awarded as of the time Lamb's reply brief was filed.

Both Lamb and the United States have appealed the court's rulings in this matter. See supra nn.1-2. The court observes that Lamb has not moved swiftly when it has brought its objections to the injunction to the court's attention. HVF I issued under seal on November 22, 2019, then judgment issued on November 26, 2019, but it was not until December 24, 2019, that Lamb filed its motion for reconsideration. HVF II issued under seal on January 8, 2020. Lamb did not file its notice of appeal until January 24, 2020, over two weeks later. After an additional delay of over one month, Lamb filed its motion for a stay of the execution of the judgment pending appeal on February 27, 2020. Lamb's motion is fully briefed and ripe for decision.

## II. STANDARD OF REVIEW

"Unless a court issues a stay, a trial court's judgment . . . normally takes effect despite a pending appeal." Coleman v. Tollefson, 135 S. Ct. 1759, 1764 (2015). A stay of execution of a judgment pending appeal "'is an intrusion into the ordinary processes of administration and judicial review,' and accordingly 'is not a matter of right, even if irreparable injury might otherwise result to the appellant.'" Nken v. Holder, 556 U.S. 418, 427 (2009) (quoting Virginian R. Co. v. United States, 272 U.S. 658, 672 (1926); Virginia Petroleum Jobbers Assn. v. FPC, 259 F.2d 921, 925 (C.A.D.C. 1958) (per curiam)). Therefore, courts should not "reflexively hold[] a final order in abeyance pending review." Id. Nevertheless, it is well settled that the power to stay execution of a judgment pending appeal is "part of [a court's] traditional equipment for the administration of justice." Scripps-Howard Radio v. FCC, 316 U.S. 4, 9-10 (1942).

Pursuant to Rule 8 of the Federal Rules of Appellate Procedure, a motion to stay execution of the trial court's judgment pending appeal ordinarily must be filed in the trial court first. See Fed. R. App. P. 8(a)(1)(A); see also Wolfchild v. United States, 108 Fed. Cl. 578, 583 (2013) ("Notwithstanding the pendency of an appeal, a motion for stay should first be filed in the trial court."). A stay pending appeal has been described as an extraordinary remedy and is not often granted. E.g., Lawson Envtl. Servs., LLC v. United States, 128 Fed. Cl. 14, 17 (2016);

Turner Constr. Co. v. United States, 94 Fed. Cl. 586, 589 (2010).  If the trial court denies the motion, the applicant may seek the same relief in the appellate court.  Fed. R. App. P. 8(a)(2)(A)(2).

In entertaining a motion under RCFC 62(d), the court considers four factors:  (1) whether the moving party has made a strong showing that it is likely to succeed on the merits; (2) whether the moving party will be irreparably injured absent the requested relief; (3) whether the requested relief will substantially injure the other parties interested in the proceeding; and (4) the public interest.  Hilton v. Braunskill, 481 U.S. 770, 776 (1987); Standard Havens Prods., Inc. v. Gencor Indus., Inc., 897 F.2d 511, 512 (Fed. Cir. 1990); Alaska Cent. Express, Inc. v. United States, 51 Fed. Cl. 227, 229 (2001).  The court need not assign each factor equal weight.  Standard Havens, 897 F.2d at 512.

Consequently, relief is appropriate where the moving party "'establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits,' provided the other factors militate in [its] favor."  Id. at 513 (quoting Hilton, 481 U.S. at 778).  When the equitable factors weigh decidedly in the moving party's favor, "it will ordinarily be enough that the [moving party] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation."  Id. (quoting Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953)); accord Alaska Cent., 51 Fed. Cl. at 230 ("[I]f the equities weigh heavily in favor of maintaining the status quo, this court may grant an injunction under RCFC 62([d]) where the question raised is novel or close, especially when the case will be returned to the trial court should the movant succeed.").

### III.  ANALYSIS

#### A.  Likelihood of Success on the Merits

The court first considers whether Lamb is likely to succeed on the merits of its appeal or has, at least, a substantial case on the merits.  Regarding its appeal, Lamb argues that it need only prevail on one of its three arguments contesting this court's resolution of HVF's protest, which are as follows:  (1) the DLA's contract award to Lamb did not fall within this court's bid protest jurisdiction; (2) HVF lacked standing to bring this protest; and (3) the SCO's evaluation of Lamb's bid was rational.  Generally, Lamb contends that it has made a strong showing of likely success on appeal or, at least, a substantial case on the merits.

While the court would agree that any one of Lamb's principal arguments, if successful, would be sufficient to invalidate the court's reasons for entering the injunction in favor of HVF in November 2019, the court cannot agree that Lamb has made a strong showing of likelihood of success, or even a substantial case on the merits, for its appeal to the United States Court of Appeals for the Federal Circuit ("Federal Circuit").  Thus, as explained below, the first factor to be weighed regarding the issuance of a stay pending appeal in this matter weighs against Lamb.  The court addresses each of Lamb's arguments against the court's injunction of performance under Lamb's contract in turn.

### 1. Jurisdiction

HVF's protest of the DLA's contract award to Lamb was within this court's jurisdiction "because the resulting contract from the [A0007598] solicitation at issue was for a mixed transaction—the awardee would be buying property from the government while also providing a non-de minimis [removal and destruction of military equipment] service to the government." Op. 12. Lamb raises three principal arguments which, in its view, invalidate the jurisdictional ruling of this court.[3]

First, Lamb argues that a close reading of the solicitation shows that Lamb's contract primarily involved the sale to Lamb of scrap military equipment, with only a de minimis service of demilitarization and/or mutilation. This court analyzed the A0007598 solicitation, however, and applied the mixed transaction test described in NASA-Reconsideration, B-408823.2, 2014 CPD ¶ 147 (Comp. Gen. May 8, 2014). The court remains convinced that the mixed transaction test is valid and that under this test, the DLA contract with Lamb was a mixed transaction that brings HVF's protest within this court's jurisdiction over protests of procurement contracts. Indeed, nothing in Lamb's motion or its reply brief presents a more persuasive analysis of the nature of the A0007598 solicitation.[4]

Second, Lamb argues that this court's application of the mixed transaction test in NASA-Reconsideration presents a matter of first impression that warrants a stay pending appeal so that the Federal Circuit can resolve Lamb's "substantial case on the merits." Mot. 8. But as Lamb notes, the mixed transaction test is buttressed by Government Accountability Office ("GAO") decisions dating from 1987 through 2014, which hardly makes the instant case a matter of first impression. Nothing in Lamb's motion or reply brief justifies the rejection of the GAO's mixed transaction test or a stay founded on Lamb's arguments against this court's jurisdictional holding.[5]

Third, Lamb cites a variety of decisions by the GAO and this court in an attempt to

---

[3] The court has considered all of Lamb's arguments. To the extent that a cursory argument is not addressed in this opinion it was deemed to be unpersuasive.

[4] Lamb's reliance on language in the A0008025 solicitation, which was created by DLA as a replacement contracting vehicle once the court enjoined Lamb's performance under the A0007598 solicitation, is unhelpful. As Lamb points out in its reply brief, contract requirements that were the focus of the court's rejection of the award of the contract to Lamb were modified or eliminated in the bridge contract solicitation. See Reply 15 n.10.

[5] Lamb's reliance on PDS Consultants, Inc. v. United States, 133 Fed. Cl. 810 (2017) ("PDS II"), is misplaced. The underlying bid protest opinion in that matter, PDS Consultants, Inc. v. United States, 132 Fed. Cl. 117 (2017), aff'd, 907 F.3d 1345 (Fed. Cir. 2018), resolved a conflict between different statutory preference schemes applicable in government contracting. All parties in that case agreed that a stay pending appeal was warranted to ensure that the Federal Circuit could provide guidance on a matter of first impression. PDS II, 133 Fed. Cl. at 817. PDS II addressed a rare circumstance that bears no resemblance to the request for a stay currently before the court.

undermine the court's reliance on and application of the mixed transaction test described in NASA-Reconsideration. The court disagrees with Lamb's conclusion that the cited decisions are more persuasive in this matter than NASA-Reconsideration. The court agrees, instead, with HVF's contention that some of this precedent was considered, and rightly rejected, in HVF I, and that most of the new decisions cited by Lamb are inapposite. The court will briefly address two decisions upon which Lamb places the most emphasis.

Lamb attempts to show, by citing various excerpts of Resource Recovery International Group, Inc., B-265880, 95-2 CPD ¶ 277 (Comp. Gen. Dec. 19, 1995) ("RRIG"), that the GAO has already decided that contracts such as Lamb's contract with the DLA have only a de minimis demilitarization component and thus are not mixed transactions. But as this court previously noted, the mixed transaction test is not mentioned in RRIG, and the fundamental jurisdictional question in this bid protest was not an issue in RRIG. Op. 12 & n.10. The court observes that the GAO explicitly noted in RRIG that its review of DLA sales contracts was established not by any jurisdictional test but by consent provided by DLA in a letter dated January 13, 1987. RRIG, 95-2 CPD ¶ 277 n.1. RRIG does not contradict or undermine the jurisdictional analysis conducted by this court in HVF I.

Lamb also relies on a GAO decision regarding a protest brought by a disappointed bidder for a scrap metal sales contract with the United States Department of the Army, Army Materiel Command, Santa Rita, LLC, B-411467.2, 2015 CPD ¶ 222 (July 20, 2015). Santa Rita does not help Lamb. First, in Santa Rita the GAO employed the mixed transaction test, which is further authority for the use of the test in this bid protest. Second, as HVF points out, the scrap metal sales contract in Santa Rita was very different in character, and much less demanding as to the awardee's responsibilities, than was the case in Lamb's contract with the DLA. These differences distinguish Santa Rita, where the GAO declined jurisdiction over the protest because the scrap sales contract in that competition was not a mixed transaction. Having considered RRIG and Santa Rita, and the other authorities relied upon by Lamb, the court is not persuaded that Lamb has a substantial case on appeal to argue that this court lacked jurisdiction over HVF's bid protest.

## 2. HVF's Standing

Lamb's second challenge relates to HVF's standing to protest. In the context of a postaward bid protest, the plaintiff must establish that there was a substantial chance it would have received the contract but for the procuring agency's errors. Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003) ("ITAC") (citing Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999)). In other words, a protestor has standing if, but for the agency's errors, it could compete for the award. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1334 (Fed. Cir. 2001) (citing Alfa Laval, 175 F.3d at 1367). Here, the court found that HVF had standing because it was a strong competitor for award of the contract with the DLA if the award to Lamb was set aside. Op. 14.

Lamb raises two arguments challenging the court's holding on standing. First, Lamb argues that the only appropriate test for standing in the circumstances of this contract award is

the test used in United States v. International Business Machines Corp., 892 F.2d 1006 (Fed. Cir. 1989) ("IBM"), and that under the IBM test, HVF did not possess standing to bring its bid protest.  Second, Lamb argues that even if IBM does not provide the appropriate test for standing, HVF's fourth-place ranking on price shows that HVF did not possess standing to bring its suit.  The court addresses each argument in turn.

In its opinion resolving the parties' cross-motions for judgment on the administrative record, the court thoroughly considered IBM and concluded that the standing test therein (for sealed bid competitions where bids differ only as to price) was not applicable in this mixed transaction sales contract competition because nonprice factors would be evaluated by the DLA along with price when making an award under the A0007598 solicitation.  Op. 13-14.  In the background section of the opinion, the court examined the instructions to bidders in the solicitation, which was not a model of clarity, and noted several instances where nonprice factors would be considered by the DLA.  Id. at 3-6.  Based on these elements of the solicitation, and its consideration of IBM and other relevant precedent, the court determined that this competition was not governed by the standing test in IBM.  Nothing in Lamb's motion or reply brief convinces the court that the solicitation, which governed the mixed transaction competition in this protest, should be read to establish a competition that falls within the IBM line of precedent.[6]

Lamb also contends that HVF fails the test for standing provided by precedent binding on this court, even if IBM is determined not to be applicable.  According to Lamb, HVF's ranking on price was too far below that of Lamb.  Lamb concludes that HVF did not have a direct economic interest in the competition, i.e., did not have a substantial chance of receiving the contract award, and thus lacked standing to bring its bid protest.

The court disagrees.  HVF met the appropriate test for standing because it was in a position to compete for the award if the award to Lamb was found to be erroneous.  A protestor need not be next in line for award if the allegations in the complaint point to a substantial chance that the awardee and other competitors were incorrectly ranked as superior to the protestor.  E.g., Raymond Express Int'l, LLC v. United States, 124 Fed. Cl. 79, 87 (2015) (citing ITAC, 316 F.3d at 1319).  The court concludes that Lamb does not have a substantial case on appeal supporting its position that HVF lacked standing to bring its bid protest.

### 3. Evaluation of Lamb's Proposal

Lamb's third challenge relates to the merits of HVF's protest.  When the court reached the merits of HVF's protest, it found two aspects of the evaluation of Lamb's bid, regarding Lamb's financial responsibility and its TSDF plan, to be inconsistent with the solicitation and irrational.  Op. 21-23.  These findings of irrationality are now contested by Lamb.  Further, Lamb argues that these protest grounds were waived by HVF because they were not raised in HVF's earlier protests before the agency and the GAO.  The court will address the waiver issue

---

[6] The court held, in addition, that even if the IBM test for standing were applied to HVF's protest, the test was satisfied because in its complaint HVF adequately challenged all of the bidders with a higher bid price.  Op. 14 n.11 (citing IBM, 892 F.2d at 1010-11).

before turning to the specific topics of Lamb's financial responsibility and its TSDF plan. First, however, the court considers whether Lamb is correct when its asserts that it had no obligation to submit required information in writing in support of its showing of financial responsibility and an adequate TSDF plan.

Both the financial responsibility and TSDF plan criteria are found in the "Criteria used for Award" section of the solicitation. Administrative R. ("AR") 188-89. There is no indication in the solicitation that these criteria could be satisfied by informal, undocumented telephone conversations or the assumptions of the SCO based on a bidder's track record with the agency. Instead, this section of the solicitation is replete with references to information that would be provided by the bidder in written form.

The following excerpts are typical of this solicitation section, and show that written documentation was the norm for satisfying these evaluation criteria: (1) "Identification and description of at least one temporary storage facility . . . ."; (2) "The procedures for identification, removal, treatment and temporary storage of regulated [polychlorinated biphenyl] items."; (3) "The Environmental Protection Agency (EPA) identification number of the facility where demilitarization, mutilation and remediation is to be accomplished."; (4) "Evidence of an established working relationship with the transporters and disposal facilities identified. If an existing relationship does not exist, the bidder should provide written evidence of the transporters or disposal facility willingness to provide subcontracting services under this Auction."; (5) "Provide evidence of availability of [processing] facilities for the duration of the period of performance, either by ownership and existing lease or by letter from the facility owners . . . ."; (6) "Provide a cost projection with regard to each contract operation, i.e., transporting, storage, [Demilitarization/]Mutilation, sales, and hazardous material and waste disposal. The cost projections must be itemized."; (7) "[P]rovide evidence that the capital is available to cover projected costs. This may be in the form of a letter of intent from a financial institution or an itemized certified financial statement."; and (8) "Documentation on the bidder's training program sufficient to demonstrate compliance with [various laws and regulatory requirements]." Id. at 188. A successful bidder, in view of these directives in the solicitation, was required to provide, in writing, documents that would satisfy the financial responsibility and TSDF plan evaluation criteria.

Lamb argues, nonetheless, that nothing in the solicitation required it to respond to the financial responsibility and TSDF plan evaluation criteria in writing. That reading is not a logical interpretation of the solicitation sections that address a bidder's financial responsibility and TSDF plan, which are discussed in more detail below. Nor does Lamb's proposition comport with the solicitation, when that document is considered as a whole, because the types of information to be submitted to and considered by the DLA were, almost exclusively, written materials. See, e.g., Magnus Pac. Corp. v. United States, 133 Fed. Cl. 640, 681 (2017) ("It is a well-established principle of government contract law that solicitation terms must be considered as a whole to discern their meaning." (citing Merando, Inc. v. United States, 475 F.2d 603, 605 (Ct. Cl. 1973))). The court concludes that Lamb was not excused from providing to the DLA, in writing, materials substantiating its financial responsibility and its TSDF plan.

### a. Waiver

Turning now to the waiver issue, Lamb argues, as it has before, that HVF waived all protest grounds that were not raised in earlier protests. Lamb cites no statutory or regulatory authority for its waiver argument. Further, only one of the decisions cited by Lamb is from a bid protest, and that case involved not an agency-level protest or a GAO protest, but a proceeding before the Office of Hearing and Appeals ("OHA") of the Small Business Administration ("SBA"). In that quite different set of circumstances, this court found waiver based on both the "unique expertise of the SBA" and Federal Circuit precedent that requires protestors to first exhaust certain administrative remedies at the OHA before seeking relief in this court. See Team Waste Gulf Coast, LLC v. United States, 135 Fed. Cl. 683, 688-89 (2018) (citing Palladian Partners, Inc. v. United States, 783 F.3d 1243, 1257-61 (Fed. Cir. 2015)).

The court finds that Lamb's waiver argument is entirely unsupported by relevant authority. For the reasons stated in this court's prior ruling, the fact that HVF did not pursue the same arguments in earlier protests before the agency and the GAO as it does here does not constitute waiver of those protest grounds. See Op. 22 (citing Sotera Defense Solutions, Inc. v. United States, 118 Fed. Cl. 237, 255 n.8 (2014), for the rule that new protest grounds may be raised in this court after an unsuccessful GAO protest); HVF Resp. 8 n.5 (citing additional authority for this rule). Lamb has not presented a substantial case in support of its waiver argument.

### b. Financial Responsibility

With respect to Lamb's contentions regarding the financial responsibility criteria, the court begins its discussion with a review of the evolution of Lamb's arguments on this topic during this protest. In its motion for judgment on the administrative record filed on October 16, 2019, Lamb relied solely on the administrative record to contend that the written documents it submitted to the DLA were sufficient to show financial responsibility pursuant to the evaluation criteria stated in the solicitation, and that the DLA's relaxation of the requirement for the submission of cost projections was, at most, a de minimis procurement error unworthy of judicial relief. Over two months later, in its motion for reconsideration filed on December 24, 2019, it went beyond the administrative record and attached a declaration from Greg S. Lamb, president and owner of the company. In his declaration, Mr. Lamb stated that "it would have taken Lamb approximately 2-3 hours to draft and finalize a cost projection summarizing anticipated operations in connection with the Tucson [DLA contract]." Lamb Dec. 23, 2019 Decl. ¶ 20. Mr. Lamb also stated that Lamb had significant experience on another DLA contract in Texarkana, and that Lamb had communicated to the SCO its intention to perform the Tucson DLA contract in the same manner as the Texarkana DLA contract. Id. ¶¶ 5, 7-11. Largely based on Mr. Lamb's declaration, Lamb argued that the SCO reasonably concluded that Lamb was financially responsible.

The court concluded that reconsideration was not warranted on the basis of evidence that Lamb could have provided earlier, but did not. Recons. Op. 4. The court also held that nothing in this new evidence showed that the SCO's evaluation and award conformed to solicitation requirements, which explicitly required cost projections from the successful bidder. Id. Thus,

the court affirmed its holding that Lamb had not met the financial responsibility requirements and that the award of the contract to Lamb was irrational.

Since December 24, 2019, Lamb's arguments regarding financial responsibility have remained the same, with Lamb relying on an updated version of Mr. Lamb's declaration. See Lamb Feb. 21, 2020 Decl. ¶¶ 5, 7-11, 20. In its motion for a stay pending appeal filed on February 27, 2020, which might be described as Lamb's third bite at the apple on the issue of financial responsibility, Lamb reasserts its argument that the SCO reasonably concluded that Lamb was financially responsible. The court observes, however, that notwithstanding the evidence presented by Lamb more than four months after Lamb's motion for judgment on the administrative record was due, "the SCO could only award a contract to a bidder who submitted cost projections, which Lamb did not do." Recons. Op. 4. The award of the contract to Lamb was contrary to the solicitation and irrational, and was properly enjoined by this court. Lamb has not made a substantial case on the financial responsibility issue currently on appeal to the Federal Circuit.

### c. TSDF Plan

The evolution of Lamb's arguments regarding the sufficiency of its TSDF plan submissions to the DLA bear many similarities to Lamb's evolving position on the issue of financial responsibility. In its motion for judgment on the administrative record filed on October 16, 2019, Lamb relied on four pages of the administrative record, AR 70, 148, 188, 253, to contend that the written documents it submitted were sufficient to satisfy the TSDF plan requirement. In Lamb's motion for reconsideration filed on December 24, 2019, Lamb went beyond the administrative record and attached three declarations—from the president, vice president and general manager of the company. These declarations, and the narrative in Lamb's motion for reconsideration, attempt to show that through email messages, telephone conversations, and site visits, the DLA obtained sufficient information to satisfy Lamb's TSDF plan requirement.

The court concluded that reconsideration was not warranted on the basis of evidence that Lamb could have provided earlier, but did not. Recons. Op. 4. The court also held that nothing in this new evidence showed that the SCO's evaluation and award conformed to solicitation requirements "because, pursuant to the terms of the solicitation, a bidder could only be an awardee if it identified a [TSDF] meeting the requirements set forth in" 40 C.F.R. § 761.65. Id. Thus, the court affirmed its holding that Lamb had not met the TSDF plan requirement and that the award of the contract to Lamb was irrational.

Since December 24, 2019, Lamb's arguments regarding the TSDF plan have remained the same, with Lamb relying on an updated version of Mr. Lamb's declaration, as well as the same December 2019 declarations proffered from the vice president and general manager of Lamb. In its motion for a stay pending appeal filed on February 27, 2020, Lamb reasserts its argument that the SCO reasonably concluded that Lamb satisfied the TSDF plan requirement. The court observes, however, that notwithstanding the evidence presented by Lamb at this late date, Lamb's submission of information regarding its TSDF plan fell short of the solicitation's requirements. The award of the contract to Lamb was contrary to the solicitation and irrational,

and was properly enjoined by this court.  Lamb has not made a substantial case regarding the sufficiency of its TSDF plan submission for its appeal to the Federal Circuit.

### B.  Irreparable Harm

Having found that Lamb is not likely to succeed in its appeal, and that Lamb does not have a substantial case for its appeal, the court now considers whether Lamb will suffer irreparable harm absent a stay of the execution of the court's judgment.  Irreparable harm is only present if the stay applicant "will be denied any meaningful relief if its motion is denied and it should ultimately prevail." Minor Metals, Inc. v. United States, 38 Fed. Cl. 379, 381 (1997).  This court has stated that "[o]nly economic loss that threatens the survival of a movant's business constitutes irreparable harm." Sierra Military Health Servs., Inc. v. United States, 58 Fed. Cl. 573, 582 (2003) (quoting Found. Health Fed. Servs. v. United States, No. 93-1717, 1993 WL 738426, at *3 (D.D.C. Sept. 23, 1993)).  In a patent infringement case, the Federal Circuit in Standard Havens equated "employee layoffs, immediate insolvency, and, possibly, extinction" with irreparable harm.  897 F.2d at 515.  In its motion, Lamb describes the financial impacts of the court's November 2019 injunction on its business in exactly these terms.

It is important to note, however, that Lamb is responsible, in part, for the imposition of the injunction.  None of the financial distress faced by Lamb, were the court to rule in favor of HVF's request for an injunction, was discussed by Lamb in its motion for judgment on the administrative record.  Recons. Op. 4 & n.2.  The court weighed the factors for granting injunctive relief in the absence of input from Lamb on this topic.  Lamb's irreparable injury, as alleged, is partly of its own making.

The court notes, too, that Lamb states in its reply brief that it is actively being considered for the award of the bridge contract; indeed, Lamb indicates that it is now the putative awardee pending verification of its responsibility.  Although Lamb suggests that its bridge contract bid price is far less advantageous to Lamb, and that there is uncertainty as to whether Lamb will actually receive the award, the prospects of receipt of the financial benefits of the bridge contract mitigate the impact of the court's injunction on Lamb's financial health and survival as a business entity.[7]  The court concludes, nonetheless, that Lamb has identified at least some irreparable financial injury that weighs in favor of its request for a stay of judgment pending appeal.

### C.  Substantial Injury to Other Parties

The third factor that the court must consider in determining whether to stay the execution of its judgment pending appeal is whether such a stay would substantially injure the other parties.  Because the United States has not filed a brief responding to Lamb's motion, there is no identified injury to the DLA should a stay issue, although both Lamb and HVF speculate as to the advantages and disadvantages that a stay might provide the government.  As for HVF, its

---

[7] The third exhibit attached to Lamb's reply brief states that it is Lamb Fuels, Inc., not Lamb Depollution, Inc., that has bid on the bridge contract.  In its brief, Lamb treats these entities as the same business concern.

prospects for award of the bridge contract appear slim, if Lamb's reply brief presents an accurate picture of the status of that competition. Given the nature of the information currently before the court, no substantial injury to the other parties has been identified in the event that the court should stay its judgment pending appeal. This factor, too, weighs in favor of Lamb's request.

### D. Public Interest

The fourth and final factor concerns the public interest. Here, HVF has the stronger argument. The court issued the injunction because the DLA did not follow the terms of the solicitation in its award to Lamb. The injunction in this case thus serves to preserve the fairness of competition for government contracts. This is not of minor import; indeed, this is the function of the court's bid protest jurisdiction. See, e.g., Red River Holdings, LLC v. United States, 91 Fed. Cl. 621, 628 (2010) (stating that "the public interest is best served when procurement errors are rectified and the award is made to the correct contractor in accord with the contract solicitations and the award criteria"). The fourth factor weighs against the issuance of a stay of the execution of this court's judgment pending appeal.

### E. Weighing of the Factors

Having considered each of the factors applicable to a stay of the execution of its judgment pending appeal, the court must weigh the factors against one another. Standard Havens, 897 F.2d at 513. The court must "weigh[] the equities as they affect the parties and the public." E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co., 835 F.2d 277, 278 (Fed. Cir. 1987). When the movant fails to demonstrate a strong likelihood of success on appeal, a stay pending appeal is appropriate when the applicant presents a substantial case and the balance of hardships tips in its favor. Standard Havens, 897 F.2d at 512-13; Alaska Cent., 51 Fed. Cl. at 230. Here, however, Lamb does not present even a substantial case on the merits, nor do the other factors, when considered together, tip the balance in Lamb's favor.

The court notes, for example, that the degree of irreparable monetary injury to Lamb is somewhat uncertain, given Lamb's status as putative awardee of the bridge contract. The court notes, too, that Lamb's own actions have contributed to both the imposition of the injunction, see supra Section III.B, and to the urgency of its request for a stay pending appeal, because Lamb repeatedly delayed the filing of its motions to obtain relief from the injunction. By Lamb's own count, it waited seven weeks to seek a stay pending appeal. These actions, along with the public interest factor, tip the balance of the equities against Lamb. See Lawson Envtl., 128 Fed. Cl. at 19 (discounting an assertion of irreparable harm where the movant delayed the filing of its motion seeking a stay pending appeal).

Even if the court were to conclude that the irreparable injury to Lamb tips the balance of the second, third, and fourth factors in Lamb's favor, a conclusion not endorsed by the court here, there would not be sufficient justification for a stay pending appeal. Finding that the balance of harms weighs in the applicant's favor, standing alone, is insufficient to support a stay pending appeal. When, for the purpose of its analysis, a court finds that the balance of harms is favorable to a stay applicant, the movant's substantial case on the merits may permit the court to enter a stay. Standard Havens, 897 F.2d at 512-13. In other words, the first factor—likelihood

of success or, at a minimum, substantial case—is essential.  Id.  Unfortunately for Lamb, it has not demonstrated even a substantial case on the merits.  Since more than a possibility of relief on appeal is required, Nken, 556 U.S. at 434, the first factor, alone, prevents Lamb from obtaining a stay pending appeal in this matter.

## IV.  CONCLUSION

For the reasons discussed above, the court **DENIES** Lamb's motion for a stay of the execution of the court's judgment pending appeal.

The court has filed this ruling under seal.  The parties shall confer to determine proposed redactions to which all the parties agree.  Then, by **no later than Friday, April 17, 2020,** the parties shall file a joint status report indicating their agreement with the proposed redactions, **attaching a copy of those pages of the court's ruling containing proposed redactions, with all proposed redactions clearly indicated**.  The parties also shall, **by the same date,** file any redacted versions of documents they filed under seal in this case to the extent such redacted versions have not already been filed.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney<br>
MARGARET M. SWEENEY<br>
Chief Judge